IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JOHN NEWTON STRANGE                                    PLAINTIFF

V.                              NO. 12-2200

CAROLYN W. COLVIN,[1]
Acting Commissioner of the Social Security Administration          DEFENDANT

## MEMORANDUM OPINION

Plaintiff, John Newton Strange, brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of a decision of the Commissioner of the Social Security Administration

(Commissioner) denying his claims for a period of disability and disability insurance benefits

(DIB) and supplemental security income (SSI) under the provisions of Titles II and XVI of the

Social Security Act (Act). In this judicial review, the Court must determine whether there is

substantial evidence in the administrative record to support the Commissioner's decision. See

42 U.S.C. §405(g).

I.      **Procedural Background:**

Plaintiff protectively filed his applications for DIB and SSI on January 11, 2010, alleging

an inability to work since October 1, 2006, due to a "bad back" and "seizures occasionally." (Tr.

113-114, 118-121, 156-157, 161). An administrative hearing was held on March 3, 2011, at

which Plaintiff appeared without counsel and testified. (Tr. 44-67).

By written decision dated May 11, 2011, the ALJ found that during the relevant time

---

[1]Carolyn W. Colvin, has been appointed to serve as acting Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule  25(d)(1) of the Federal Rules of Civil Procedure.

-1-

period, Plaintiff had an impairment or combination of impairments that were severe - mood

disorder, epilepsy and sleep apnea. (Tr. 20). However, after reviewing all of the evidence

presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of

severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P,

Regulation No. 4. (Tr. 20). The ALJ found Plaintiff retained the residual functional capacity

(RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is limited to occasional crawling, crouching, kneeling, stooping, balancing and climbing of ramps, stairs, ropes, ladders and scaffolds. The claimant needs to avoid exposure to extreme heat and cold, humidity, wetness, noise, vibration, fumes, odors, gases, poor ventilation and hazards, including machinery and heights. The claimant is also limited to work where interpersonal contact is incidental to the work performed, the complexity of the tasks is learned and performed by rote with few variables and little judgment involved. Supervision required is simple, direct and concrete.

(Tr. 22).  With the help of the vocational expert (VE), the ALJ determined that Plaintiff was

unable to perform any past relevant work, but that there were other jobs Plaintiff could perform,

such as assembler, hand packager, and mail clerk. (Tr. 27-28).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which

denied the request on July 12, 2012. (Tr. 1-4). Subsequently, Plaintiff filed this action. (Doc. 1).

This case is before the undersigned pursuant to the consent of the parties. (Doc. 5).  Both parties

have filed appeal briefs, and the case is now ready for decision. (Docs. 8, 9).

The Court has reviewed the entire transcript. The complete set of facts and arguments are

presented in the parties' briefs, and are repeated here only to the extent necessary.

-2-

## II.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§423(d)(3), 1382(3)(D).  A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

AO72A
(Rev. 8/82)

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity (RFC). See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

**III.   Discussion:**

Plaintiff raises the following issues on appeal: 1) The ALJ failed to properly develop the evidence; 2) The ALJ failed to consider evidence which fairly detracted from his findings; 3) The ALJ failed in his credibility findings; 4) The ALJ failed to give proper weight to the physician's opinions; and 5) The ALJ failed in his RFC Assessment. (Doc. 8). The Court will address issues 2,4, and 5 together, as they all relate to the legal sufficiency of the RFC finding.

**A.      Failure to Fully and Fairly Develop the Record:**

Plaintiff argues that the ALJ had an obligation to try to obtain an RFC from a treating physician, and made no attempt to do so.

The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995); Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir. 2000). This is particularly true when Plaintiff is not represented by counsel. Payton v. Shalala, 25 FG.3d 684,

-4-

686 (8th Cir. 1994).  This can be done by re-contacting medical sources and by ordering additional consultative examinations, if necessary.  See 20 C.F.R. § 404.1512.  The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press his case. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010).  However, the ALJ is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record.  See Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995)("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial").  "The regulations do not require the Secretary or the ALJ to order a consultative evaluation of every alleged impairment.  They simply grant the ALJ the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination."  Matthews v. Bowen, 879 F.2d 423, 424 (8th Cir. 989).

The ALJ had before him many medical records which addressed both Plaintiff's physical and mental impairments in question.  In 2007, Plaintiff complained of headaches, numbness and burning in his arms, and was diagnosed with hypertension/cephalgia.[2] (Tr. 258, 265).  In 2008, an EEG was performed on Plaintiff, and the impression was that focal or epileptiform abnormalities were not noted, but that their absence did not exclude the possibility of a seizure disorder. (Tr. 278).

On February 11, 2010, Plaintiff presented himself to the Veterans Administration with the following problems: back pain and nerves. (Tr. 284).  Dr. Gerald Lawrence Guyer found that Plaintiff had full range of motion in his back, with no limitation when not being examined.  Dr. Guyer reported that malingering was suspected. (Tr. 287). Plaintiff's strength was 5/5 bilaterally,

---

[2]Cephalgia - Headache. Dorland's Illustrated Medical Dictionary 330 (32nd ed. 2012).

and he had a normal gait. (Tr. 288). Dr. Guyer assessed Plaintiff with "chronic back pain out of proportion to physical findings;" depression; and PTSD (post traumatic stress disorder). (Tr. 288). Tobacco cessation was discussed, but Plaintiff was not interested at that time. (Tr. 288). Chest x-rays taken on February 11, 2010 revealed no acute cardiopulmonary disease. (Tr. 279).

On February 12, 2010, Plaintiff complained of depression and was started on Zoloft. (Tr. 302). On March 1, 2010, Plaintiff reported that he felt the medication had helped little with anxiety and mood. (Tr. 302). It was reported that Plaintiff started using marijuana in the 7th grade and used it most days until December of 2009. (Tr. 303).

On March 1, 2010, in a Case Analysis, Dr. Bill F. Payne found that Plaintiff's physical impairments were non-severe. (Tr. 297).

On March 22, 2010, Dr. Han Soe of the VA evaluated Plaintiff. (Tr. 370). Plaintiff reported to Dr. Soe that since the Zoloft dosage was increased, his nightmares had become less violent and "eased up." (Tr. 373). Plaintiff also reported he had a drinking problem while he was in the military and somehow, he managed to stop drinking without having to go through the AA meetings or rehabilitation. (Tr. 373). Dr. Soe diagnosed Plaintiff as follows:

| | |
|---|---|
| Axis I: | PTSD - childhood abuse, improving |
| | Alcohol Abuse vs Dependence, in full remission |
| | History of Amphetamine Abuse, in remission |
| Axis II: | Deferred |
| Axis III: | See above active list of problems |
| Axis IV: | Unemployed |
| Axis V: | GAF 61 |

(Tr. 375).

On April 13, 2010, Plaintiff reported that his seizures were starting again and he was also having problems with his back. (Tr. 367). It was noted at that time that Plaintiff was not on any

-6-

AO72A
(Rev. 8/82)

seizure medications. (Tr. 368).

On April 26, 2010, Steve A. Shry, Ph.D., conducted a Mental Diagnostic Evaluation. (Tr. 312).  During the evaluation, Plaintiff cited PTSD, seizures and back pain as his reasons for applying for disability. (Tr. 312).  Plaintiff reported not being on any psychiatric medication at that time, and cited financial difficulty as an obstacle to treatment. (Tr. 312). Dr. Shry diagnosed Plaintiff as follows:

|         |                                              |
|---------|----------------------------------------------|
| Axis I: | Polysubstance Abuse, in remission            |
|         | Adjustment Reaction, depression (moderate)   |
|         | PTSD (by history)                            |
| Axis II:| None                                         |
| Axis V: | GAF - 60-71                                  |

(Tr. 314). Dr. Shry further found that Plaintiff was capable of handling his own hygiene and dressing, but that Plaintiff reported physical impairment in his ability to perform household chores. (Tr. 314). Dr. Shry found that Plaintiff did not appear to be impaired in his ability to communicate and interact in a socially adequate manner or in his ability to communicate in an intelligible and effective manner; did not seem to be impaired in his ability to sustain concentration when completing tasks; did not appear to be impaired in his ability to sustain persistence when completing tasks; and did not seem to be impaired in his ability to complete tasks within acceptable time frames. (Tr. 314).

A CT head without contrast was performed on May 12, 2010, which revealed no intra or extraaxial lesions demonstration, and probable residual or chronic bilateral ethmoid sinus disease. (Tr. 338).

On June 3, 2010, non-examining consultant, Dr. Kay M. Gale, completed a Psychiatric Review Technique form and a Mental RFC Assessment form. (Tr. 315, 329).  Dr. Gale found

AO72A
(Rev. 8/82)

that Plaintiff had a mild degree of limitation in restriction of activities of daily living and in difficulties in maintaining social functioning, and a moderate degree of limitation in difficulties in maintaining concentration, persistence, or pace. (Tr. 325). She also noted that marked functional limitation due to mental issues was not described and that Plaintiff seemed capable of semiskilled work. (Tr. 327, 331).

On August 30, 2010, Plaintiff was seen by Dr. Edith Lubin at the VA.   (Tr. 342). Dr. Lubin assessed Plaintiff as follows:

> 1. Seizures - refer to neurology for evaluation and treatment
> 2. Depression - denies suicide ideation. Last attempt 7 years ago. Stble.
> 3. PTSD - stable. Manage by psych
> 4. Elevated BP - decline referral to nutritionist. Diet management.

(Tr. 344). When assessing Plaintiff's back pain score, Plaintiff rated it "8," but declined medication adjustment or other pain management interventions at that time. (Tr. 349).

On September 16, 2010, a Physical RFC Assessment was completed by non-examining consultant Dr. Jim Takach. (Tr. 390-397).  Dr. Takach found Plaintiff was capable of performing light work with certain limitations. (Tr. 391-394).

On September 29, 2010, Dr. Shari M. Desilva, a neurologist at the VA, examined Plaintiff and found Plaintiff's gait and station was mildly unsteady; his range of motion - cervical - full; lumbar - full; assessment of stability - stable; muscle appearance - normal; muscle tone - normal; and muscle strength - 5/5 throughout. (Tr. 447, 450).  She reported that Plaintiff's examination was notable for anterior cerebellar dysfunction, which is typical of alcoholic cerebellar dysfunction. (Tr. 451). She agreed that Plaintiff most likely had partial complex epilepsy, which was likely related to a 2003 head injury.  She noted that he "appears to be

-8-

AO72A
(Rev. 8/82)

benefiting [sic] from topamax and I would continue this." She also ordered a sleep study and advised Plaintiff that under Arkansas law, he may not drive until he has been seizure free for one year. (Tr. 451).

On October 13, 2010, Plaintiff reported to Tori L. Harris, a Licensed Clinical Social Worker at the VA, that his mood was doing better and that he had noticed improvements in several areas since he started the Topiramate and Trazodone. (Tr. 555). He reported that he was much more level and was not as quick to anger. (Tr. 557).

On October 18, 2010, Dr. Jennifer J. Craig, staff physician at the VA, reported that Plaintiff had previously had seizure problems, but none since being on Topiramate. (Tr. 534). She also reported that Plaintiff seemed to be doing well.  (Tr. 536).

On October 20, 2010, Plaintiff was seen by Christopher M. Bauer, Ph.D., neuropsychologist. (Tr. 398). At that time, Plaintiff denied having any significant problems in daily functioning, although his daughter helped him with his medication. (Tr. 399). Dr. Bauer noted Plaintiff walked with a cane and a pronounced limp and appeared to have some difficulty breathing while walking down the hall. (Tr. 400). Dr. Bauer found that Plaintiff's neuropsychological test performance was indicative of significant cognitive weakness in aspects of attention/concentration and executive functions, with more mild weakness in aspects of verbal/visual memory, psychomotor speed, and visual-spatial/visual-constructional functions. (Tr. 403). He therefore gave a diagnosis of Cognitive Disorder NOS rather than dementia. (Tr. 403).

On October 21, 2010, x-rays of Plaintiff's chest revealed chronic obstructive pulmonary disease with peribronchial thickening. (Tr. 410).  A sleep study was subsequently conducted and

it was discovered that Plaintiff had moderate obstructive sleep apnea, and a CPAP was recommended. (Tr. 647).

On November 10, 2010, Plaintiff reported that he had been feeling level and steady mood-wise lately, and wanted to continue with his current medication regimen. (Tr. 507). On November 12, 2010, Plaintiff was diagnosed with diabetes mellitus. (Tr. 501).

On January 1, 2011, Plaintiff reported to the VA that he was not doing well and was having cravings to use alcohol and drugs, due to family and extended family stressors. (Tr. 482. However, on January 28, 2011, Plaintiff reported to Ms. Tori L. Harris at the VA that his mood was "very festive" and that his current pain level was "almost none." (Tr. 467). Plaintiff reported that he was doing well and felt that his medication was doing well. (Tr. 467). Again, on March 2, 2011, Plaintiff reported to Ms. Harris that his mood was "great." and his pain level was "6 or 7, I did a lot of riding yesterday." (Tr. 683).

The ALJ considered all of the above evidence, including that of Dr. Christopher Bauer, and the Court believes the existing medical sources contained sufficient evidence for the ALJ to make a determination.  He gave great weight to Dr. Shry as well as to the RFC conclusion reached by the medical consultant's employed by the State Disability Determination Services. (Tr. 26-27).  He further stated that although the state agency medical consultant was non-examining, "he is well-versed in the assessment of functionality as it pertains to the disability provisions of the Social Security Act, as amended." (Tr. 27).  The ALJ concluded:

> In sum, the above residual functional capacity assessment is supported by the opinions of the state agency experts, the consultative examinations, and the medical evidence of record. The evidence shows the claimant has improved significantly while under the care of the physcians [sic] and with appropriate medications. There is no treating source opinion that the

-10-

claimant is more limited than as provided in the above residual functional capacity assessment.

(Tr. 27).

Based upon the foregoing, as well as those reasons given in Defendant's well-stated brief, the Court finds there is substantial evidence to support the conclusion that the ALJ did not fail to fully and fairly develop the record.

**B.      Failure to properly consider and  weigh the evidence and RFC Assessment:**

RFC is the most a person can do despite that person's limitations.   20 C.F.R. §404.1545(a)(1).  It is assessed using all relevant evidence in the record.  Id.  This includes medical records, observations of treating physicians and others, and the claimant's own description of his limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).   Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3).  The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).   Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace.  Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).   "The ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC."  Id.

As noted by Defendant, Plaintiff argues three points with respect to the RFC: 1) The ALJ failed to consider evidence which fairly detracted from his findings; 2) He questions the weight accorded to treating sources; and 3) He disputes the ALJ's overall RFC finding.

-11-

Plaintiff refers to his diabetes, obesity, migraine headaches, chronic back and knee pain, and GAF scores in support of his argument that the ALJ failed to consider certain evidence. However, it is first important to note that in his application, Plaintiff stated that the conditions that limited his ability to work were bad back and seizures occasionally (Tr. 161)**,** and failure to allege a condition as an impairment is significant.  <u>Dunahoo v. Apfel</u>, 241 F.3d 1033, 1039 (8th Cir. 2001).  In addition, the ALJ had before him the report of Dr. Gerald Lawrence Guyer, Plaintiff's primary care physician at the VA, who found Plaintiff had full range of motion in his back, with no limitation when not being examined, and that malingering was suspected. (Tr. 287). Dr. Guyer concluded that Plaintiff's chronic back pain was out of proportion to the physical findings. (Tr. 288). The ALJ also had before him the Physical RFC Assessment dated September 16, 2010, where Dr. Jim Takach concluded that Plaintiff could perform light work with certain limitations. (Tr. 391-394).   In addition, the ALJ had before him all of the medical evidence relating to Plaintiff's mental impairments, and gave great weight to Dr. Shry's assessment, who gave Plaintiff a GAF score of 60-71.  It is also noteworthy that Dr. Han Soe of the VA assessed Plaintiff with a GAF score of 61.

Based upon the foregoing, as well as for those reasons given in Defendant's well-stated brief, the Court finds that there is substantial evidence to support the ALJ's RFC assessment**.**

**C.**    **Credibility Findings:**

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional

-12-

restrictions.  See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  While an ALJ may not

discount a claimant's subjective complaints solely because the medical evidence fails to support

them, an ALJ may discount those complaints where inconsistencies appear in the record as a

whole.  Id.  As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility

is primarily a matter for the ALJ to decide."  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir.

2003).

In this case, the ALJ found that Plaintiff's medically determinable impairments could

reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning

the intensity, persistence and limiting effects of the symptoms were not credible to the extent

they were inconsistent with the ALJ's RFC assessment. (Tr. 25).  The ALJ addressed Plaintiff's

daily activities, noting that Plaintiff maintains the home he resides in and is responsible for its

upkeep.  (Tr. 25). The ALJ also noted, which is confirmed by the record, that although Plaintiff

needs reminders from his niece, mother and daughters to take medication, bathe and complete

housekeeping chores, he is able to prepare meals and take care of his various animals. (Tr. 25).

In his Function Report dated January 22, 2010, Plaintiff reported that he regularly

performed household tasks like laundry, dishes and cleaning, and had no problem with personal

care. (Tr. 179-180). He also reported that he still did all of his shopping for clothes, food, and

pays his bills. (Tr. 182). He reported that he watched television and went fishing four or five

times a month when he got someone to go with him. (Tr. 183-184).  At the hearing before the

ALJ, Plaintiff stated that he was working with his animals and helping his mother out some, was

keeping the house and yard up, and mowed the grass with a riding lawn mower. (Tr. 54).  It is

also important to note that although Plaintiff complained of back pain, he declined the offer to

-13-

have his medications adjusted or discuss other pain management interventions.  This is inconsistent with allegations of disabling pain.

Based upon the foregoing, as well as those reasons given in Defendant's well-stated brief, the Court finds there is substantial evidence to support the ALJ's credibility findings.

**IV.    Conclusion:**

Accordingly, having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed. The undersigned further finds that Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 13th  day of September, 2013.


/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-14-